**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN WERTYMER, Individually, and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Case No. 1:23-cv-14700 |
| WALMART, INC., | ) ) | |
| Defendant. | ) ) | |

**WALMART INC.'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS THE CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................................1

FACTUAL BACKGROUND .................................................................................................2

LEGAL STANDARD............................................................................................................5

ARGUMENT .........................................................................................................................6

     I.     The labeling of Great Value™ brand "Raw Honey" and "Organic Raw Honey" as "raw" is not false or misleading. ........................................................6

     II.    The labeling of Great Value™ brand "Organic Raw Honey" is not false or misleading for any other reason. ..................................................................8

     III.   The complaint fails to state an ICFA claim. .............................................9

          A.     Wertymer has not alleged the labeling is deceptive....................9

          B.     Wertymer has not alleged any actual damages. .........................11

          C.     Wertymer has not alleged the labeling is unfair. .......................12

     IV.   The complaint fails to state a claim for fraudulent misrepresentation..................12

     V.    Wertymer is not entitled to a declaratory judgment.............................................13

     VI.   Wertymer lacks standing to pursue injunctive relief. ...........................................14

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alber v. Illinois Dept. of Mental Health and Developmental Disabilities*,
    786 F. Supp. 1340 (N.D. Ill. 1992) ........................................................................14

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................5, 6, 8

*Batson v. Live Nation Entm't, Inc.*,
    746 F.3d 827 (7th Cir. 2014) ............................................................................12

*Beardsall v. CVS Pharmacy, Inc.*,
    953 F.3d 969 (7th Cir. 2020) ............................................................................10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................5, 9

*Bell v. Publix Super Mkts., Inc.*,
    982 F.3d 468 (7th Cir. 2020) ............................................................................10

*Benson v. Fannie May Confections Brands, Inc.*,
    944 F.3d 639 (7th Cir. 2019) ............................................................................11

*Bober v. Glaxo Wellcome PLC*,
    246 F.3d 934 (7th Cir. 2001) ............................................................................10

*Bower v. Jones*,
    978 F.2d 1004 (7th Cir. 1992) ..........................................................................13

*Brownmark Films, LLC v. Comedy Partners*,
    682 F.3d 687 (7th Cir. 2012) ..............................................................................7

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ......................................................................*passim*

*Castro v. Dart*,
    2022 WL 4367463 (N.D. Ill. Sept. 21, 2022) ......................................................14

*Chiappetta v. Kellogg Sales Co.*,
    2022 WL 602505 (N.D. Ill. Mar. 1, 2022).........................................................13

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..........................................................................................14

*Cocroft v. HSBC Bank USA, N.A.*,
796 F.3d 680 (7th Cir. 2015) .................................................................9

*Cunningham Bros., Inc. v. Bail*,
407 F.2d 1165 (7th Cir. 1969) ..............................................................14

*Demaria v. Nissan N. Am., Inc.*,
2016 WL 374145 (N.D. Ill. Feb. 1, 2016) .............................................11

*Denius v. Dunlap*,
330 F.3d 919 (7th Cir. 2003) .................................................................4

*Fed. Trade Comm'n v. Sperry & Hutchinson Co.*,
405 U.S. 233 (1972)..............................................................................12

*Frye v. L'Oreal USA, Inc.*,
583 F. Supp. 2d 954 (N.D. Ill. 2008) ....................................................11

*Gardner v. Ferrara Candy Co.*,
2023 WL 4535906 (N.D. Ill. Mar. 22, 2023)...................................10, 15

*Gardner v. Ferrara Candy Co.*,
No. 1:22-cv-01272, Dkt. 28, 32 (N.D. Ill. 2023) ...................................9

*Grabowski v. Dunkin' Brands, Inc.*,
2017 WL 6059966 (N.D. Ill. Dec. 7, 2017).......................................14, 15

*Guerrero v. Howard Bank*,
2022 WL 1211480 (N.D. Ill. Apr. 25, 2022) .........................................14

*Guzman v. Walmart Inc.*,
2023 WL 4535903 (N.D. Ill. May 15, 2023) ..........................................9

*Hoffmann v. Kashi Sales, L.L.C.*,
646 F. Supp. 3d 550 (S.D.N.Y. 2022).....................................................13

*Ibarrola v. Kind, LLC*,
83 F. Supp. 3d 751 (N.D. Ill. 2015) .......................................................6

*In re Boeing 737 MAX Pilots Litig.*,
638 F. Supp. 3d 838 (N.D. Ill. 2022) .....................................................13

*Kim v. Carter's Inc.*,
598 F.3d 362 (7th Cir. 2010) ................................................................11

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006) ................................................................10

*Outley v. City of Chicago*,
    407 F. Supp. 3d 752 (N.D. Ill. 2019) ....................................................................4

*Outley v. Feinerman*,
    2023 WL 4157185 (N.D. Ill. June 22, 2023) .......................................................14

*Pickett v. Sheridan Health Care Ctr.*,
    664 F.3d 632 (7th Cir. 2011) ..............................................................................4

*PRM Realty Grp. v. Wood*,
    2002 WL 1792063 (N.D. Ill. Aug. 5, 2002) .......................................................13

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002) .................................................................................12

*Siegel v. Shell Oil Co.*,
    612 F.3d 932 (7th Cir. 2010) ..............................................................................9

*Swanigan v. City of Chicago*,
    881 F.3d 577 (7th Cir. 2018) ............................................................................14

**Statutes**

815 ILCS § 505/2 .......................................................................................................12

815 ILCS § 505/10a(a) ..............................................................................................11

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................................6

Fed. R. Civ. P. 9(b) ................................................................................10, 11, 12, 13

Fed. R. Civ. P. 23(b)(3) ............................................................................................15

**Other Authorities**

7 C.F.R. § 205.105 ...............................................................................................1, 5, 8

7 C.F.R. § 205.602 .....................................................................................................5

7 C.F.R. § 205.604 .....................................................................................................5

Codex Alimentarius, About Codex, *FAQs*, *available at* https://www.fao.org/fao-
    who-codexalimentarius/about-codex/faq/faq-detail/it/c/454753/ (last visited
    Dec. 7, 2023).........................................................................................................6

Codex Alimentarius, *Standard for Honey*, *available at* fao.org/fao-who-
codexalimentarius/sh-
proxy/en/?lnk=1&url=https%3A%2F%2Fworkspace.fao.org%2Fsites%2Fcod
ex%2FStandards%2FCXS+12-1981%2FCXS_012e.pdf (last visited Dec. 7,
2023) ...................................................................................................................7

Shapla et al., *5-Hydroxymethylfurfural (HMF) levels in honey and other food
products: effects on bees and human health*, 12 Chemistry Central J. 35
(2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5884753/
(last visited Dec. 7, 2023) ...................................................................................7

USDA, Agricultural Marketing Service, Commercial Item Description, *Honey*
(Oct. 23, 2019), *available at*
https://www.ams.usda.gov/sites/default/files/media/AA20380_Honey.pdf (last
visited Dec. 7, 2023) ...........................................................................................4

USDA, Agricultural Marketing Service, *Commercial Item Descriptions*, *available
at* https://www.ams.usda.gov/sites/default/files/media/FactSheet_CIDS.pdf
(last visited Dec. 7, 2023) ...................................................................................4

## INTRODUCTION AND SUMMARY OF ARGUMENT

John Wertymer alleges that Walmart misleads consumers by labeling its Great Value™ brand "Raw Honey" and "Organic Raw Honey" products "raw" and "organic." He contends the honey is not raw because it is heated too much during processing, and the organic product is not organic because Walmart adds foreign sugars. Neither allegation is supported by the complaint (or true), and the laboratory reports Wertymer attaches to his complaint flatly contradict these claims. Wertymer's accusations fail to state a claim and should be dismissed with prejudice.

*First*, Wertymer has not shown that the labeling of either product as "raw honey" is deceptive to reasonable consumers or that he personally was deceived. Both products satisfy the U.S. Department of Agriculture's definition of "raw honey." Moreover, the complaint identifies an international standard and scientific test to determine if honey has been overheated, and the laboratory reports show neither product was overheated. Wertymer also does not allege what he personally believed the phrase "raw honey" meant at the time he bought the products.

*Second*, Wertymer's laboratory tested "Organic Raw Honey" for foreign sugars and found none.

*Third*, a product's "organic" status is not impacted by the presence of foreign sugars unless the particular sugars are prohibited by 7 C.F.R. § 205.105, which Wertymer does not allege. Thus, the complaint fails to show that "organic" is misleading.

*Fourth*, Wertymer has not alleged any actual damages (*i.e.*, actual pecuniary loss) for the above reasons and because he has not alleged facts showing the honey he received is worth less than he paid for it.

*Fifth*, the complaint fails to reach the high bar for a claim of unfair business practices under the Illinois Consumer Fraud and Deceptive Business Practices Act. Wertymer has not alleged any

violation of a public policy, any conduct by Walmart so oppressive that consumers could not reasonably avoid it, or a "substantial injury" to consumers.

*Sixth*, Wertymer's fraudulent-misrepresentation claim fails because he has not alleged any false statement, that Walmart had knowledge any statement was false or any intent to defraud consumers, or any damage.

*Seventh*, the declaratory-judgment claim fails because Wertymer does not face any threat of future injury, declaratory relief is not appropriate when a party is already seeking damages, and Wertymer has not shown the lack of an adequate legal remedy.

*Finally*, Wertymer does not have standing to pursue injunctive relief because he has no viable claims and he does not allege facts supporting an immediate threat of future injury. Wertymer has not alleged any intention to buy the products in the future, and because he now knows the facts, he can avoid buying them.

## FACTUAL BACKGROUND

Wertymer alleges that on June 13, 2022, he bought one bottle each of Walmart's Great Value™ brand "Raw Honey" and "Organic Raw Honey" from a Walmart store in Niles, Illinois. Compl. ¶¶ 31-32. He says the products are falsely labeled because the honey is neither "raw" nor "organic." *Id*. ¶ 2. According to Wertymer, the honey is not raw because Walmart excessively heats it during processing, and the organic product is not organic because Walmart has added foreign sugars. *Id.* As a result, Wertymer claims the products are worth less than he paid for them and he failed to receive the benefit of his bargain. *Id.* ¶¶ 37-39.

Wertymer alleges that honey heated to a temperature "more than 105 degrees" is not considered raw (by someone) because "the enzymes in the honey that are prized by consumers who purchase raw honey begin to break down and are lost." *Id.* ¶ 15. According to the complaint, the scientific community and honey industry determine whether honey has been overheated and

the enzymes destroyed by identifying the level of the organic compound 5-hydroxymethylfurfural ("HMF") in the honey using a simple test. *Id.* ¶ 17. Wertymer alleges that raw honey out of the beehive "typically" has an HMF value of zero to 9 mg/kg, but that the Codex Alimentarius ("Codex"), recognized as the international reference standard, allows for a maximum HMF value of 40 mg/kg, unless the honey is sourced from a tropical region, in which case the maximum HMF value is 80 mg/kg. *Id.* ¶¶ 18-19 & n.2.

After buying the products in June 2022, Wertymer gave the bottles to one of his attorneys, Mr. Heitzinger. In April 2023, ten months later, Heitzinger shipped the bottles to a laboratory in British Columbia that specializes in testing honey. *Id.*, Ex. 2 & 4 at cover page (showing receipt by laboratory on Apr. 5, 2023). The reports from these tests are attached to the complaint as Exhibits 2 and 4. The reports list the HMF value for "Organic Raw Honey" (Exhibit 2) as 23 mg/kg, and for "Raw Honey" (Exhibit 4) as 22 mg/kg—both well below the Codex maximum of 40 mg/kg. *Id.* ¶ 20 & Ex. 2 at 10; Ex. 4 at 10. "Organic Raw Honey" is a product of Brazil. Compl. ¶ 7, Ex. 1, Ex. 2. Because Brazil is a tropical climate, the HMF maximum of 80 mg/kg would apply to this product, if the Codex applied at all. Compl. ¶ 19 n.2. The reports conclude both products are "HMF compliant." *Id.*, Ex. 2 at 1, 10; Ex. 4 at 1, 10.

Wertymer similarly alleges that the scientific test to determine if foreign sugars have been added to honey is the mannose value. *Id.* ¶ 22. According to the complaint, mannose is a monosaccharide not found in honey with a pH value lower than 5, but found regularly in industrial sugars. *Id.* ¶ 23. The complaint further alleges that a mannose level greater than 0.02 g/100 g "indicates the presence of foreign sugars." *Id.* ¶ 24. Wertymer alleges the mannose value for "Organic Raw Honey" was 0.06 g/100 g. *Id.* ¶ 25. However, the laboratory report states only that a mannose value above 0.02 g/100 g "*could* indicate the presence of foreign sugars," while

acknowledging that "the presence of mannose cannot be excluded for certain geographic origins and/or botanical varieties." *Id.*, Ex. 2 at cover page, 5. As noted, this honey is from Brazil. The laboratory report further states that "expert interpretation is suggested when mannose is present in the honey." *Id.*, Ex. 2 at 5. Although it identifies mannose as a possible marker for foreign sugars, the laboratory conducted 53 specific tests for foreign sugars in Wertymer's bottle and found none. The product passed every test, including the mannose test. *Id.*, Ex. 2 at 1, 3, 4. The report concludes: "There are no indications for the presence of foreign sugars." *Id.*, Ex. 2 at 4.

Despite these laboratory reports that flatly contradict his claims, Wertymer alleges "upon information and belief" that "Raw Honey" is not raw, and "Organic Raw Honey" is not raw or organic. *Id.* ¶¶ 21, 26.

Agricultural products, including honey, are regulated by the U.S. Department of Agriculture ("USDA"). The USDA's Agricultural Marketing Service develops national standards for fresh and processed fruits, vegetables, nuts, and other products and publishes "commercial item descriptions" that describe the most important characteristics of commercial products.[1] The Commercial Item Description ("CID") for "honey" defines "raw honey" as "[h]oney as it exists in the beehive or as obtained by extraction, but not filtered. Raw honey may contain fine particles, pollen grains, air bubbles, comb, propolis and other defects normally found in suspension."[2] Heating is not mentioned in the definition, let alone heating above 105°F.

---

[1] USDA, Agricultural Marketing Service, *Commercial Item Descriptions*, *available at* https://www.ams.usda.gov/sites/default/files/media/FactSheet_CIDS.pdf (last visited Dec. 7, 2023). The Court should take judicial notice of information published on official government websites. *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003); *Outley v. City of Chicago*, 407 F. Supp. 3d 752, 767-68 (N.D. Ill. 2019) (taking judicial notice of document posted on city's website) (citing *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 648 (7th Cir. 2011)).

[2] USDA, Agricultural Marketing Service, Commercial Item Description, *Honey*, at 5 (Oct. 23, 2019), *available at* https://www.ams.usda.gov/sites/default/files/media/AA20380_Honey.pdf (last visited Dec. 7, 2023).

USDA's Agricultural Marketing Service also regulates organic products. *See generally* 7 C.F.R. Part 205. To be sold or labeled as "organic" a product must not include synthetic substances or ingredients, certain nonsynthetic substances prohibited by § 205.602 and § 205.604, nonagricultural substances, or nonorganic agricultural substances. 7 C.F.R. § 205.105. The complaint's reference to the possible presence of "foreign sugars" (albeit incorrect) does not implicate the organic status of "Organic Raw Honey" because there is no allegation that any of the purported unidentified "foreign sugars" are prohibited substances under 7 C.F.R. § 205.105.

Wertymer purports to bring causes of action for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") and fraudulent misrepresentation, and seeks a declaratory judgment. Compl. ¶¶ 49-75. He also seeks to represent a nationwide class of persons and entities who bought the products during the applicable limitations period, or alternatively, an Illinois class of purchasers. *Id.* ¶ 42.

## LEGAL STANDARD

A court should dismiss a complaint if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at 678. Legal conclusions are not "facts" for Rule 8 purposes. *Id.* at 678-79; *Twombly*, 550 U.S. at 555. Neither is it enough for a plaintiff to allege facts "merely consistent with" liability or showing only that entitlement to relief is *possible*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## ARGUMENT

**I.     The labeling of Great Value™ brand "Raw Honey" and "Organic Raw Honey" as "raw" is not false or misleading.**

Wertymer alleges the term "raw" honey is false and/or misleading because Walmart has heated the honey above 105 degrees, which he contends breaks down the desirable enzymes. However, USDA's official description of "raw honey" is "[h]oney as it exists in the beehive or as obtained by extraction, but not filtered. Raw honey may contain fine particles, pollen grains, air bubbles, comb, propolis and other defects normally found in suspension." *See* note 2, *supra*. It does not reference any temperature limitation for heating. Wertymer does not explain why reasonable consumers in the United States would (or that he himself did at the time of purchase) understand the phrase "raw honey" to mean something other than USDA's definition. *See Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756-59 (N.D. Ill. 2015) (applying "reasonable consumer" standard to ICFA and fraud claims). After all, USDA regulates honey in this country. The complaint does not allege that Wertymer or any other consumer was even aware of the Codex standards, much less premised their expectations for raw honey on them. Wertymer's desire to substitute his own preferred definition of "raw" for USDA's does not and cannot make it deceptive for a U.S. retailer to label its products consistent with USDA's definition.

Even if the Court accepts Wertymer's allegations that the HMF value is the sole test and that Codex is the appropriate reference standard,[3] the "Raw Honey" and "Organic Raw Honey"

---

[3] The Codex website states that "Codex texts are voluntary and do not have binding effect on national food legislation." Codex Alimentarius, About Codex, *FAQs*, *available at* https://www.fao.org/fao-who-codexalimentarius/about-codex/faq/faq-detail/it/c/454753/ (last visited Dec. 7, 2023); *see also* note 4 at page 5 (stating that Annex, including HMF guidelines, "is intended for voluntary application by commercial partners and not for application by governments"). The Court may consider the Codex Alimentarius because it is referenced in the complaint and central to Wertymer's claims. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012).

products Wertymer bought both tested well within the Codex guidelines. Wertymer alleges that raw honey "typically" has an HMF value of zero to 9 mg/kg and complains the HMF value here is 2.4 times the highest value of *typical* raw honey. Compl. ¶ 18. But Walmart's products do not claim to fall at any specific point on the spectrum of HMF values, even if the Court accepts Wertymer's premise that "raw" is somehow a statement about HMF levels. Section 3.2 of the Codex standard states that "[h]oney shall not be heated or processed to such an extent that its essential composition is changed and/or its quality is impaired."[4] Thus, even the Codex HMF standard allows for minimal processing. The laboratory reports show that the products Wertymer bought met this standard and were "HMF compliant." Compl., Ex. 2 at 1, 10; Ex. 4 at 1, 10. And Wertymer has not alleged facts showing there was any change in the "essential composition" of his "Raw Honey" or "Organic Raw Honey" products.

Finally, while HMF levels can increase when honey is heated, they also increase naturally with time and when the honey is stored at higher temperatures.[5] Wertymer bought the products in June 2022. His attorney, Mr. Heitzinger, shipped the products to British Columbia for testing 10 months later. *Id.*, Ex. 2 & 4 at cover page. As a result, the HMF levels at the time Wertymer bought the products are unknown and could have been even lower. For all these reasons, Wertymer has not shown the name "raw honey" was false or misleading.

---

[4] Codex Alimentarius, *Standard for Honey*, *available at* fao.org/fao-who-codexalimentarius/sh-proxy/en/?lnk=1&url=https%3A%2F%2Fworkspace.fao.org%2Fsites%2Fcodex%2FStandards%2FCXS+12-1981%2FCXS_012e.pdf (last visited Dec. 7, 2023) (cited in Compl. ¶ 16 n.1).

[5] Shapla et al., *5-Hydroxymethylfurfural (HMF) levels in honey and other food products: effects on bees and human health*, 12 Chemistry Central J. 35 (2018), *available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5884753/ (last visited Dec. 7, 2023). The Court may consider information on government websites. *See* note 1, *supra*.

## II.   The labeling of Great Value™ brand "Organic Raw Honey" is not false or misleading for any other reason.

Wertymer's claim that "Organic Raw Honey" is not "organic" and is otherwise mislabeled also fails on its face. Wertymer alleges the product is not organic and additionally does not comply with FDA labeling regulations because "upon information and belief" Walmart has added foreign sugars. *Iqbal* requires more to sustain a cause of action. As an initial matter, the presence of foreign sugars is unrelated to the product's "organic" status unless the sugars are prohibited by USDA regulations. Even if the product contained foreign sugars (no evidence exists it does), Wertymer does not allege that any of the sugars is prohibited under 7 C.F.R. § 205.105. Accordingly, Wertymer has not shown the product is not organic.

Wertymer's claim that the product fails to comply with FDA labeling regulations likewise fails. Citing an FDA guidance document, Wertymer contends "FDA regulations prevent honey mixed with an additional sweetener from being labeled with the common or usual name 'honey' because labeling a mixture of honey and another sweetener as 'honey' does not properly identify the basic nature of the food." Compl. ¶ 16. This claim fails at the threshold because Wertymer has not plausibly shown that "Organic Raw Honey" contains an additional sweetener. The laboratory report attached to the complaint shows that the product Wertymer bought was tested for 53 foreign sugars and passed *every* test. Compl., Ex. 2 at 1, 3, 4. The report states: "***There are no indications for the presence of foreign sugars***." *Id.* at 4 (emphasis added).

Wertymer nevertheless surmises Walmart must have added some unidentified foreign sugars because the mannose value was 0.06 g/100 g, which he says exceeds the Codex limit of 0.02 g/100 g. Compl. ¶¶ 24-25; *id.*, Ex. 2 at 5. This claim misses the mark. To begin, mannose is not mentioned in the Codex Standard for Honey (*see* note 4, *supra*). The complaint's reference to 0.02 g/100 g comes solely from the laboratory report itself, which does not cite any source. Compl.,

Ex. 2 at 5. More importantly, the laboratory report states the product *passed* the mannose test.[6] *Id.* at 4 (last line of table). The additional information about mannose on page 5 states only that a mannose value above 0.02 g/100g "*could* indicate the presence of foreign sugars," but that "expert interpretation is suggested." *Id.* at 5. In other words, according to this laboratory, viewed in isolation, the mannose value could potentially indicate the presence of foreign sugars, but the laboratory's own comprehensive testing for foreign sugars did not find any. As a result, the claim fails to cross the line "from conceivable to plausible" and should be dismissed. *Twombly*, 550 U.S. at 570.[7]

## III.     The complaint fails to state an ICFA claim.

Under the ICFA, a plaintiff must show: "(1) the defendant committed a deceptive act or practice; (2) the defendant intended for the plaintiff to rely on the deception; (3) the deception happened in the course of trade or commerce; and (4) the deception proximately caused the plaintiff's injury." *Cocroft v. HSBC Bank USA, N.A.*, 796 F.3d 680, 687 (7th Cir. 2015). A plaintiff may alternatively allege an "unfair" business practice. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). Wertymer has not alleged facts showing Walmart committed a deceptive or unfair act or that he has been injured.

### A.     Wertymer has not alleged the labeling is deceptive.

Wertymer does not allege facts showing the labeling is deceptive to reasonable consumers or that Wertymer himself was actually deceived. The complaint must allege facts showing the labeling is "likely to deceive reasonable consumers." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d

---

[6] The mannose test result identified on Ex. 2, page 4, is 551 mg/kg, which is 0.0551 g/100 g. When rounded, this is 0.06 g/100 g, which is the same result reported on page 5 of Ex. 2.

[7] Plaintiff's counsel, Mr. Sheehan, has a long history of filing meritless lawsuits involving food labeling, which has not gone unnoticed in this district. *See Gardner v. Ferrara Candy Co.*, No. 1:22-cv-01272, Dkt. 28, 32 (N.D. Ill. 2023) (citing cases); *Guzman v. Walmart Inc.*, 2023 WL 4535903, at *3-4 (N.D. Ill. May 15, 2023) (issuing show cause order directed to Sheehan).

969, 972-73 (7th Cir. 2020). "This standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Gardner v. Ferrara Candy Co.*, 2023 WL 4535906, at *3 (N.D. Ill. Mar. 22, 2023) (quoting *Bell v. Publix Super Mkts., Inc.*, 982 F.3d 468, 474-75 (7th Cir. 2020) (cleaned up)). When the labeling is not misleading as a matter of law, the ICFA claim should be dismissed. *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938-40 (7th Cir. 2001). For all the reasons set forth in sections I and II above, Wertymer has not shown the labeling of "Raw Honey" or "Organic Raw Honey" is deceptive to reasonable consumers.

Neither has Wertymer alleged facts showing he personally was deceived. "[A] damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513-14 (7th Cir. 2006). Wertymer's claim of deceptive conduct is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b), which requires him to "state with particularity the circumstances constituting fraud." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736-37 (7th Cir. 2014) (quoting Rule 9(b)). As a practical matter, Wertymer must identify "the who, what, when, where, and how" of the alleged fraud. *Id.* at 737. Wertymer has not alleged "how" he was personally deceived. He does not allege what he interpreted the terms "raw honey" or "organic" to mean at the time he bought the products, nor does he allege that his understanding is common among consumers. A general allegation that the labeling fails to comply with the "reasonable expectations" of consumers does not "state with particularity" the manner in which Wertymer was deceived.

Wertymer further alleges that Walmart "concealed material information" (Compl. ¶ 59), but the allegation is entirely conclusory. He does not identify what Walmart should have disclosed, as Rule 9(b) requires, nor does he plead facts establishing Walmart had a duty to disclose the

information. *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *9 (N.D. Ill. Feb. 1, 2016) (explaining that the duty to disclose arises only in limited circumstances).

> **B.** **Wertymer has not alleged any actual damages.**

A private party bringing an action under the ICFA must show "actual damage." *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (citing 815 ILCS § 505/10a(a)). "Actual damage" means "actual pecuniary loss." *Camasta*, 761 F.3d at 739. An actual pecuniary loss occurs "if the seller's deception deprives the plaintiff of 'the benefit of the bargain' by causing her to pay 'more than the actual value of the property.'" *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 647 (7th Cir. 2019) (citing *Kim*, 598 F.3d at 365).

Wertymer has not alleged what he paid for the products in June 2022. "Damages may not be predicated on mere speculation, hypothesis, conjecture, or whim." *Frye v. L'Oreal USA, Inc.*, 583 F. Supp. 2d 954, 957 (N.D. Ill. 2008). Although he alleges Walmart currently charges 40 cents per ounce for "Raw Honey" and "Organic Raw Honey," and 33 cents per ounce for its regular or filtered honey (Compl. ¶ 38), the "Raw Honey" and "Organic Raw Honey" products had HMF values of 22 mg/kg and 23 mg/kg, respectively, compared to 39 mg/kg for Walmart's regular honey product. According to Wertymer, this means "Raw Honey" and "Organic Raw Honey" are of higher quality. Wertymer also considers a product that is not "filtered" to have more value (*see* Compl. ¶ 37), and he does not allege "Raw Honey" and "Organic Raw Honey" are filtered. Wertymer has therefore failed to show the products are not worth 7 cents more per ounce than regular honey. *Camasta*, 761 F.3d at 739-40 ("Without any facts to support his conclusory assertions of actual damage, Camasta has not sufficiently pleaded that he paid more than the actual value of the merchandise he received."). Moreover, because Wertymer alleges Walmart sells both "*Organic* Raw Honey" and "Raw Honey" for 40 cents per ounce (Compl. ¶ 38), he cannot contend he paid more because "*Organic* Raw Honey" was labeled "organic."

11

### C. Wertymer has not alleged the labeling is unfair.

Wertymer also has not alleged facts showing that the labeling of the products as "raw" and "organic" is an unfair business practice. When determining whether conduct is unfair under the ICFA, courts examine three factors established by the Federal Trade Commission ("FTC") and approved by the U.S. Supreme Court, specifically, "whether the practice (1) offends public policy; (2) is immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to consumers." *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 830 (7th Cir. 2014) (citing *Fed. Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)); *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002); 815 ILCS § 505/2. The complaint does not satisfy any of these factors.

The complaint's allegation of unfairness consists of one sentence: "[Walmart's] policy is unethical and is oppressive and unscrupulous because it was done for its own profit at the expense of the Plaintiff and class members, causing substantial injury." Compl. ¶ 64. "Simply adding language of 'unfairness' … does not alter the fact that [Wertymer's] allegations are entirely grounded in fraud under the ICFA." *Camasta*, 761 F.3d at 737 (applying Rule 9(b) to unfair practices claim). Wertymer's allegation is nothing more than a conclusory recitation of the *Sperry* factors and, accordingly, any claim for unfair practices fails.

## IV. The complaint fails to state a claim for fraudulent misrepresentation.

In Illinois, "a fraudulent misrepresentation claim requires (1) a false statement or omission of material fact; (2) knowledge or belief of the falsity by the party making it; (3) intention to induce the other party to act; (4) action by the other party in reliance on the truth of the statements; and (5) damage to the other party resulting from such reliance." *In re Boeing 737 MAX Pilots Litig.*, 638 F. Supp. 3d 838, 864 (N.D. Ill. 2022) (cleaned up).

This claim fails at the first step because, as discussed above, Wertymer has not shown the labeling is false. The complaint also fails to allege facts showing Walmart knew of any false statements. To the contrary, the complaint shows the honey *does* qualify as raw and organic. The complaint concedes the knowledge element is not satisfied by alleging that Walmart had "actual *or constructive* knowledge" the products did not meet standards. Compl. ¶¶ 27-30 (emphasis added). This allegation is both conclusory and equivocal—but it is unequivocally insufficient as a matter of law. Fraud requires actual—not constructive—knowledge. *See Hoffmann v. Kashi Sales, L.L.C.*, 646 F. Supp. 3d 550, 564 (S.D.N.Y. 2022) (allegation that defendant had "actual and/or constructive knowledge of the falsity" was insufficient).

The complaint also fails to plead fraudulent intent. "While Rule 9(b) allows state of mind to be pled generally, [Wertymer] must still identify 'specific, objective manifestations of fraudulent intent.'" *PRM Realty Grp. v. Wood*, 2002 WL 1792063, at *2 (N.D. Ill. Aug. 5, 2002) (quoting *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)). The complaint's allegation is entirely conclusory. *See* Compl. ¶ 69 ("Walmart made these representations with the intent of defrauding or deceiving Plaintiff and the Class into purchasing honey at premium prices."); *Chiappetta v. Kellogg Sales Co.*, 2022 WL 602505, at *8 (N.D. Ill. Mar. 1, 2022) (finding that conclusory allegation failed to allege fraudulent intent).

This claim fails additionally because Wertymer has not shown any actual damage, as discussed in section III.B.

## V.     Wertymer is not entitled to a declaratory judgment.

Wertymer's declaratory-judgment claim also should be dismissed. A plaintiff seeking declaratory relief must allege a "real and immediate threat" of future injury; past injury alone is insufficient. *Castro v. Dart*, 2022 WL 4367463, at *3 (N.D. Ill. Sept. 21, 2022) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *Alber v. Illinois Dept. of Mental Health and*

*Developmental Disabilities*, 786 F. Supp. 1340, 1353-54 (N.D. Ill. 1992). The threatened injury must be "certainly impending." *Castro*, 2022 WL 4367463, at *3 (quoting *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018)). Wertymer does not allege he intends to buy the products again; thus, any claim of future harm is speculative. *See Camasta*, 761 F.3d at 740-41.

Moreover, "[s]ince [Wertymer] is now aware of [Walmart's] sales practices, he is not likely to be harmed by the practices in the future." *Id*. at 741; *see Grabowski v. Dunkin' Brands, Inc.*, 2017 WL 6059966, at *4 (N.D. Ill. Dec. 7, 2017) ("Grabowski alleges that he now knows that the Blueberry Glazed Donut does not contain real blueberries. Thus, based on the pleadings there is no indication of a future threat of harm to Grabowski.").

"The purpose of the Declaratory Judgment Act 'is to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication, without waiting until his adversary should see fit to begin suit, after damage had accrued.'" *Guerrero v. Howard Bank*, 2022 WL 1211480, at *2 (N.D. Ill. Apr. 25, 2022) (quoting *Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969)). Because Wertymer alleges that liability and damages have already occurred, declaratory relief "would serve no purpose." *Id.* Moreover, "courts typically decline to grant declaratory relief when plaintiffs are merely seeking a declaration of liability," which is what Wertymer seeks here. *Id*.

Finally, Wertymer is not entitled to equitable relief in the form of a declaratory judgment because he has not shown he lacks an adequate legal remedy. *Outley v. Feinerman*, 2023 WL 4157185, at *6 (N.D. Ill. June 22, 2023).

## VI. Wertymer lacks standing to pursue injunctive relief.

Wertymer's prayer for relief includes a request for "injunctive relief," however, it is unclear whether he seeks anything beyond a damages class under Rule 23(b)(3). Compl. ¶ 77(a). In any event, Wertymer lacks standing to seek injunctive relief for himself or on behalf of a putative class

because he has no viable claims. *Gardner*, 2023 WL 4535906, at *9 ("Without any viable claim for relief, there are no claims for which [plaintiff] can seek injunctive relief as a remedy.") (cleaned up); *see Camasta*, 761 F.3d at 740 ("Absent a showing of a violation of the ICFA, a plaintiff is not entitled to injunctive relief.").

As with his claim for declaratory relief, Wertymer also lacks standing to seek injunctive relief because he has not alleged a likelihood that he will be harmed by Walmart's conduct in the future. As discussed above, Wertymer does not allege any intention to buy the honey products again, and even if he had such an intention, he is now aware of the facts and would not be harmed in the future. *Camasta*, 761 F.3d at 741; *Grabowski*, 2017 WL 6059966, at *4.

<u>CONCLUSION</u>

The Court should dismiss the complaint for failure to state a claim upon which relief can be granted. Because the complaint's deficiencies cannot be cured, the dismissal should be with prejudice.

Dated:  December 7, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:  */s/ William F. Northrip*
William F. Northrip, IL Bar No. 6315998
Dylan P. Tilbury, IL Bar No. 6343549
111 S. Wacker Drive, Suite 4700
Chicago, Illinois 60606-4314
Telephone:  (312) 704-7700
Facsimile:  (312) 558-1195
wnorthrip@shb.com
dtilbury@shb.com

*Attorneys for Defendant Walmart Inc.*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 7, 2023, the foregoing was electronically filed with the Clerk of the Court, by which notification of such filing was electronically sent and served to all parties via the CM/ECF system.

<em><u>/s/ William F. Northrip</u></em>