UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John Wertymer, individually, and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>v.<br><br>Walmart, Inc.,<br><br>   *Defendant*. | No. 23 CV 14700<br><br>Judge Lindsay C. Jenkins |

**ORDER**

Plaintiff John Wertymer brings a putative class action against Defendant Walmart, Inc., alleging that its Great Value brand "Organic Raw Honey" and "Raw Honey" are deceptively marketed. [Dkt. 1.] Walmart moves to dismiss Wertymer's Complaint. [Dkt. 13.] For the reasons stated below, Walmart's motion is granted.

**I. Background**

Wertymer purchased Organic Raw Honey and Raw Honey from Walmart on June 13, 2022. [Dkt. 1 ¶¶ 3, 8, 10.] Organic Raw Honey's only listed ingredient is "organic raw honey," and Raw Honey's only listed ingredient is "raw honey." [*Id.* ¶¶ 9, 11.] Wertymer alleges that customers value raw and organic honey for the presence of chemical compounds and nutritional and health benefits. [*Id.* ¶¶ 13–14.] Thus, Walmart charges, and customers pay, a premium for these products relative to Walmart's filtered honey. [*Id.* ¶ 37.] But Walmart's customers are not getting what they pay for—based on chemical analysis, Wertymer alleges that Organic Raw Honey and Raw Honey are not "Organic," "Raw," or even "Honey." [*Id.* ¶¶ 33–34, Exh. 1–4.]

Wertymer alleges that "Raw Honey" is not raw because it is overheated during processing. [*Id.* ¶ 17.] According to Wertymer, "[t]he scientific community and honey industry employ a simple test – reviewing the 5-hydroxymethylfurfural (HMF) value – to determine when honey has been overheated and the enzymes destroyed." [*Id.*] The World Trade Organization recognizes the Codex Alimentarius as a reference for honey standards, and the Codex allegedly sets a maximum HMF value for honey of 40 mg/kg. [*Id.* ¶ 19.] Raw honey, Wertymer alleges, leaves the beehive with no HMF or with an HMF value of 1–9 mg/kg. [*Id.* ¶ 18.] Lab testing revealed that the Raw Honey Wertymer purchased had an HMF value of 22 mg/kg, allegedly because it was heated to above 105 degrees Fahrenheit during processing. [*Id.* ¶¶ 20–21.]

As to Organic Raw Honey, Wertymer alleges that Walmart's product is neither organic nor raw because Walmart adds foreign sugars during processing. [*Id.* ¶¶ 22,

1

26.] The scientific community and honey industry allegedly look to honey's mannose value—"a mono saccharide not found in honey with a pH value lower than 5" but "regularly found in industrial sugars"—to determine whether a "processor added foreign sugars not suitable for honey." [*Id.* ¶¶ 22–23.] Wertymer alleges that a mannose level of greater than 0.02g/100g "indicates the presence of foreign sugars," and that his Organic Raw Honey had a mannose value of 0.06g/100g. [*Id.* ¶¶ 24–25.]

Invoking this Court's diversity of citizenship jurisdiction, Wertymer filed this putative class action lawsuit. He asserts three claims on behalf of himself and similarly situated consumers. First, he alleges that Walmart's labeling of Organic Raw Honey and Raw Honey violates the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.* [Dkt. 1 ¶¶ 49–64.] Second, he alleges that Walmart's labeling constitutes fraudulent misrepresentation. [*Id.* ¶¶ 65–71.] Third, he seeks a declaration that Walmart's Organic Raw Honey and Raw Honey are mislabeled. [*Id.* ¶¶ 72–75.] Wertymer proposes to represent a class under Federal Rule of Civil Procedure 23 seeking monetary, declaratory, and injunctive relief. [*Id.* ¶¶ 76–77.] Walmart moves to dismiss pursuant to Rule 12(b)(1) and (6). [Dkt. 13.]

## II.    Legal Standards

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff, *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023), but it need not accept statements of law or conclusory factual allegations as true, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). To survive dismissal, "a complaint must state a claim to relief that is plausible on its face." *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022) (cleaned up). This standard requires plaintiffs to provide "just enough details about the subject matter of the case to present a story that holds together," or "to nudge their claims across the line from conceivable to plausible." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up). Claims sounding in fraud, however, must be pleaded with particularity under Rule 9(b), which requires alleging "the first paragraph of any newspaper story, i.e., the who, what, when, where, and how of the fraud." *Lanahan v. County of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) (cleaned up).

## III.    Analysis

### A.    ICFA Deception and Fraudulent Misrepresentation

Claims of deceptive conduct under the ICFA and fraudulent misrepresentation are both subject to Rule 9(b)'s heightened pleading standard. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). To prevail on his ICFA deception claim,

Wertymer must allege that Walmart "committed a deceptive … act with the intent that others rely on the deception, that the act occurred in the course of trade or commerce, and that it caused actual damages." *Benson*, 944 F.3d at 646 (quotation omitted). To establish fraudulent misrepresentation, he must allege:

> (1) a false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance.

*Wigod*, 673 F.3d at 569 (cleaned up).[1] Because both of these claims turn on whether Wertymer has alleged a false, deceptive, or misleading statement with particularity, the Court addresses them together. [*See* Dkt. 16 at 6–9 (addressing falsity and deception together); Dkt. 21 at 3–6; Dkt. 22 at 2–3.]

Walmart argues that Wertymer has failed to allege that its honey products contain false or misleading representations because a reasonable consumer would not interpret "Raw Honey" and "Organic Raw Honey" to mean what Wertymer alleges. [Dkt. 16 at 6.] Although the Codex's guidelines for raw and organic honey reference the HMF value, mannose content, and heating levels, Walmart notes that the U.S. Department of Agriculture ("USDA"), which regulates honey in the United States, does not use these standards. [*Id.*] *See* USDA, Agricultural Marketing Service, Commercial Item Description: Honey 3 (2019), https://www.ams.usda.gov/sites/default/files/media/AA20380_Honey.pdf ("When organic honey is specified by the user, the organic honey must be produced, handled, and labeled in accordance with the USDA organic regulations by an operation that is certified organic in accordance with the requirements of the National Organic Program (7 CFR Part 205). A Certificate of Organic Production or Handling must be provided to verify that the product was processed and handled in accordance with the USDA organic regulations."); *id.* at 5 (defining "raw honey" as "Honey as it exists in the beehive or as obtained by extraction, but not filtered. Raw honey may contain fine particles, pollen grains, air bubbles, comb, propolis and other defects normally found in suspension."); 7 C.F.R. § 205.102 *et seq.* (providing the requirements for a product to be labeled "organic," with no mention of the Codex, added or foreign sugars, mannose, HMF, or heating to a specific temperature).[2] Walmart argues that a reasonable

---

[1] The Complaint does not indicate which state's (or states') law applies to this claim. For present purposes, the Court applies Illinois law because Wertymer proposes to represent an Illinois-specific class in addition to a nationwide class. [*See, e.g.*, Dkt. 1 ¶ 76.]

[2] Walmart argues that the Court can take judicial notice of these USDA documents because they are published on the official agency website. [Dkt. 16 at 4 n.1.] Wertymer makes no counterargument [*see* Dkt. 21], and the Court agrees that these documents are judicially noticeable. The Court may take judicial notice of "a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and the Court must take judicial notice upon the proper

3

consumer would not expect "Raw Honey" and "Organic Raw Honey" to conform to the Codex's standards, as opposed to USDA regulations, so any alleged nonconformity with Codex standards does not make its products' names misleading. [Dkt. 16 at 6.]

In response, Wertymer reiterates his allegations about how the scientific community and honey industry understand raw and organic honey, and he notes that the district court in *Wingate v. Barkman Honey, LLC*, 2020 WL 362647 (D. Kan. Jan. 22, 2020), denied a motion to dismiss based on similar allegations. [Dkt. 21 at 3–4.] Walmart protests that the allegations in *Wingate* were materially different [Dkt. 22 at 3], and the Court agrees, but on slightly different grounds. In *Wingate*, the plaintiff pleaded facts that made it plausible that a reasonable consumer would expect the honey not to be overheated:

> Plaintiff's definition of raw therefore focuses on the effect of heating on the physical properties consumers expect and seek in raw honey. Under Plaintiff's definition, honey is "raw" if those properties remain intact; honey is not "raw" if those properties are altered, compromised, or destroyed.
>
> The well-pleaded facts plausibly establish that a reasonable consumer could share this definition of the term "raw." Barkman's website—as alleged in the complaint—touts Barkman's "raw honey" as "warmed just enough to liquefy the honey crystals while retaining natural enzymes." Plaintiff's allegations regarding this statement therefore support his definition of "raw" because this statement arguably recognizes that consumers are concerned that too much heat during processing could alter, compromise, or destroy the natural enzymes. The Court finds that Plaintiff has plausibly alleged that a reasonable consumer could share his definition and, thus, adequately pleads a false statement.

2020 WL 362647, at *6 (citation omitted). Here, in contrast, there are no allegations about what a reasonable consumer would believe about raw or organic honey, or about what Wertymer believed when he bought the products at issue here; nor are there factual allegations that permit the Court to infer what a reasonable consumer would expect about honey products. [*See* Dkt. 16 at 9–10.] The lack of such allegations means that Wertymer cannot satisfy the "how" required to plead a plausible fraud claim under Rule 9(b). *See Lanahan*, 41 F.4th at 862. [*Contra* Dkt. 21 at 7–8.] Wertymer has not alleged what a reasonable consumer would believe about honey products; thus, he has not plausibly alleged how Walmart deceived customers.

---

request of a party. Fed. R. Evid. 201 (b)(2), (c)(2); *cf. Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of official government documents). To be clear, the Court is not taking judicial notice of the fact that the USDA's standards are appropriate or the best definitions; it takes notice of the existence of the USDA standards themselves.

4

Nor has Wertymer established that Organic Raw Honey is deceptively labeled on the basis of added ingredients. He alleges that "Walmart's 'Organic Raw Honey' is not organic or raw because [Walmart] adds foreign sugars during processing" [Dkt. 1 ¶ 22], but his only basis for that allegation is the chemical analysis of the honey. The report states that the presence of mannose in a concentration higher than 0.02g/100g "could indicate the presence of foreign sugars or industrial processing practices" and that "[a]n expert interpretation is suggested when mannose is present in the honey." [*Id.* at 24.] But alleging that honey "could" contain contents that would make it not "organic" by the Codex's standards is not the same as alleging that it actually contains those contents, and as Walmart notes, the report itself states that "[t]here are no indications for the presence of foreign sugars." [*Id.* at 23; *see* Dkt. 16 at 8–9.] Even construed in Wertymer's favor, his allegations are insufficient "to nudge [his] claims across the line from conceivable to plausible." *Russell*, 82 F.4th at 571 (cleaned up). Because Wertymer relies on the report's findings to show that Walmart's products are deceptively labeled, the fact that the report found no indication of foreign sugars provides an "'obvious alternative explanation' for the complaint's factual allegations": there were no added sugars. *See Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009)). Therefore, Wertymer fails to state a plausible claim of deceptive conduct.

Wertymer's failure to sufficiently allege deceptive conduct dooms his ICFA deception claim and his fraudulent misrepresentation claim. The Court therefore does not reach Walmart's additional arguments about these claims.

### B.     ICFA Unfairness

Wertymer also alleges that Walmart's labeling was an unfair practice under the ICFA. [Dkt. 1 ¶¶ 63–64.] "Illinois courts look to three considerations to ascertain whether conduct is unfair under the ICFA: '(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers.'" *Benson*, 944 F.3d at 647 (quoting *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 961 (Ill. 2002)). Rule 9(b)'s heightened pleading standard does not apply to unfairness claims because they do not sound in fraud. *See id.* at 646. Even so, Walmart argues that Wertmyer's claim fails because the Complaint contains a single sentence about unfairness, which merely recites the legal standard. [Dkt. 1 ¶ 64 ("Defendant's policy is unethical and is oppressive and unscrupulous because it was done for its own profit at the expense of the Plaintiff and class members, causing substantial injury.").] The Court agrees. Given that the Complaint fails to allege why a reasonable consumer would expect Walmart's Raw Honey or Organic Raw Honey to have a particular mannose content or not to be heated beyond a certain point, the Complaint also fails to state a claim for unfairness. Wertymer does not identify a public policy Walmart's labeling violates or explain how the labeling is immoral or causes substantial injury. *See Benson*, 944 F.3d at 647. Simply reciting the legal standard is a conclusion of law that the Court need not treat as true. *See Bilek*, 8 F.4th at 851.

In response, Wertymer argues that his allegation that customers unjustifiably pay premium prices for these products are sufficient to plead an unfair practice. [Dkt. 21 at 8–9.] He might have a point if he had alleged facts making it plausible that these products are sold at inflated prices relative to what consumers would expect. *Benson* held that allegations that the defendant "includ[ed] needless slack-fill in its chocolate boxes," which "amounted to a misrepresentation of the quantity of chocolate within," was sufficient to state an unfairness claim. 944 F.3d at 647. But while it is reasonable to infer that a customer would believe that the size of a product's container reflects the quantity of the product inside, it is not reasonable to infer that a customer expects honey to meet standards other than USDA standards without a factual basis for such an inference. The Complaint lacks such allegations; in fact, the lab reports indicate that Walmart's honey complied with the Codex standards. Thus, Wertymer has failed to state a plausible claim for an unfair practice under the ICFA.

## C. Standing for Declaratory and Injunctive Relief

Walmart argues that Wertymer's declaratory judgment claim fails because he has not alleged that he plans to buy Walmart's honey products again and, similarly, he lacks standing to pursue injunctive relief because he now has knowledge about the alleged mislabeling, meaning he is not at imminent risk of a future harm. [Dkt. 16 at 13–15.] *See Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017). Wertymer responds:

> In a consumer fraud case, "an individual plaintiff's claim for injunctive relief [and declaratory judgment] is ordinarily moot because [he] has already discovered the defendant's fraud and is therefore unlikely to be deceived again." *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 706 (N.D. Ill. 2020). But as the *Mullen* court went on to explain, "when that plaintiff represents class members who may later discover the defendants' fraud, [his] claim is 'capable of repetition,' and [he] may pursue [his] claim for injunctive relief [and declaratory judgment] despite loss of [his] personal stake." *Mullen*, 488 F. Supp. 3d at 706.

[Dkt. 21 at 10–11 (alterations in original).] The Court agrees with both sides in part.

Walmart is correct that putative class representatives must themselves have standing. [Dkt. 22 at 7–8.] *See Campbell v. Miller*, 373 F.3d 834, 836 (7th Cir. 2004). But Wertymer is correct that a plaintiff who loses standing because his claim becomes moot may nevertheless be able to represent a class under the "capable of repetition, yet evading review" exception to the mootness doctrine. *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017) (explaining that this doctrine may apply even if a class has not been certified). Nevertheless, the Court agrees with Walmart that, at present, the Complaint does not properly allege standing to seek injunctive or declaratory relief "because [Wertymer] has not alleged a likelihood that he will be harmed by Walmart's conduct in the future." [Dkt. 16 at 15.] If he hopes to represent

6

a class of individuals who want to buy Walmart's honey, but only at fair prices, he may be able to become the named plaintiff if there is a risk that "at some point each class member will discover that" Walmart's honey is mislabeled in some way, mooting his or her individual claim for injunctive relief. *See id.* If so, without the mootness exception, it might never be possible to litigate the claim on behalf of a class. But given that Wertymer's Complaint is deficient, the Court need not take firm position on whether allegations of this type fit within the mootness exception because, as explained next, it will give Wertymer an opportunity to amend his Complaint.

### D. Leave to Amend

Walmart asks the Court to deny Wertymer leave to amend his Complaint because the deficiencies it has identified are incurable and Wertymer's proposed amendments are inadequate. [Dkt. 22 at 8–10; *see* Dkt. 21 at 11.] The Court agrees that the minor changes Wertymer suggests do not address the central deficiencies the Court discussed above. The allegations Wertymer proposes to add do not explain why a reasonable consumer would expect honey to conform to the Codex standards rather than USDA requirements or, indeed, show that Walmart's Raw Honey and Organic Raw Honey violate the Codex standards in the first place. Still, giving a plaintiff at least one chance to amend is the norm, *see Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022), and Wertymer may be able to fix at least some of the deficiencies in his Complaint given the matters discussed in this Order. Therefore, the dismissal will be without prejudice. Although the Court has not addressed all of Walmart's arguments, its motion to dismiss was fully briefed, so Wertymer should make any changes in response to those arguments in an amended complaint; he should not expect a third chance to plead his claims.

### IV. Conclusion

For the foregoing reasons, Walmart's motion to dismiss [Dkt. 13] is granted. Wertymer's Complaint is dismissed without prejudice. Any amended complaint must be filed by March 14, 2024.

Enter: 23-cv-14700
Date: February 22, 2024

_____
Lindsay C. Jenkins
United States District Judge

7