UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| John Wertymer, individually, and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>Walmart, Inc.,<br><br>*Defendant*. | No. 23 CV 14700<br><br>Judge Lindsay C. Jenkins |

**ORDER**

Plaintiff John Wertymer alleges that Defendant Walmart, Inc.'s Great Value brand "Raw Honey" and "Organic Raw Honey" are deceptively marketed and seeks to represent classes of similarly situated customers in a class action. [Dkt. 26.] The Court dismissed Wertymer's initial Complaint [Dkt. 25], and he filed a First Amended Complaint. Walmart again moves to dismiss. [Dkt. 30.] The motion is granted.

**I.   Background**

This case concerns consumers' expectations about "raw" honey. Wertymer alleges that "[c]onsumers know that raw honey is a natural product produced by honeybees composed of various sugars, minerals, proteins, enzymes, amino acids, and organic acids." [*Id.* ¶ 7.] Consumers value raw honey for these compounds and are willing to pay a premium for raw honey relative to filtered honey, which "is excessively heated during processing," causing the beneficial compounds to break down. [*Id.* ¶¶ 8–9.] Consumers and honey producers, Wertymer alleges, understand that "the difference between raw honey and filtered honey is that filtered honey loses the benefits of raw honey through excessive heating and processing." [*Id.* ¶ 12; *see id.* ¶¶ 10–11 (explaining why some producers filter their honey).]

Wertymer alleges that he and other consumers expect that "honey labeled as raw is not heated or processed like filtered honey" and that those expectations "are consistent with the [U.S. Department of Agriculture ("USDA")] definition of raw honey." [*Id.* ¶ 13.] *See* USDA, Agricultural Marketing Service, Commercial Item Description: Honey 5 (2019), https://www.ams.usda.gov/sites/default/files/media/AA20380_Honey.pdf ("**Raw honey.** Honey as it exists in the beehive or as obtained by extraction, but not filtered. Raw honey may contain fine particles, pollen grains, air bubbles, comb, propolis and other defects normally found in suspension."). The National Honey Board, an instrumentality of the USDA, states that "While there is no official U.S. federal definition of 'raw' honey, it generally means honey that has

1

not been heated or filtered." *Frequently Asked Questions*, Nat'l Honey Bd., https://honey.com/faq; [Dkt. 26 ¶ 14 (quoting part of this sentence); *see also id.* ¶¶ 15–18 (discussing Health Digest and Healthline articles about raw honey).] Further, raw and organic honey are different, and organic honey is not necessarily raw. [*See* Dkt. 26 ¶¶ 19–20.] Based on these understandings, Wertymer alleges that he and other customers expect honey that is labeled "raw" to be "actually raw and thus retain the properties for which it is prized," that is, "raw" honey is not "heated like filtered honey or … subjected to industrial processing." [*Id.* ¶21.]

Walmart markets and sells "Raw Honey" and "Organic Raw Honey" under its Great Value brand throughout the United States. [*Id.* ¶¶ 22–25.] Wertymer alleges, however, that these products are not "raw" because Walmart subjects Organic Raw Honey "to industrial processing," and it "excessively heat[s] [Raw Honey] during processing." [*Id.* ¶¶ 50–51.][1] According to Wertymer, "[t]he scientific community and honey industry employ a simple test – reviewing the 5-hydroxymethylfurfural (HMF) value – to determine when honey has been overheated and the enzymes destroyed." [*Id.* ¶¶ 26–27.] "HMF occurs at very low concentrations and can even be absent in both fresh honey and food products," but "heat treatment and/or prolonged storage conditions can enhance further HMF production." [*Id.* ¶ 28 (quoting Ummay Mahfuza Shapla *et al.*, *5-Hydroxymethylfurfural (HMF) Levels in Honey and Other Food Products: Effects on Bees and Humans*, Chem. Cent. J. (2018)).] Wertymer alleges that raw honey typically has no HMF or an HMF value below 10 mg/kg. [*Id.* ¶¶ 29–30 (citing *Technical Information*, Airborne, https://www.airborne.co.nz/pages/hmf#:~:text=It%20is%20usual%20for%20HMF).] In contrast, filtered honey has higher HMF values, often near the 40 mg/kg limit set by the Codex Alimentarius, which the World Trade Organization recognizes as a reference for honey standards. [*Id.* ¶¶ 30–32.]

Wertymer also alleges that "[t]he scientific community and honey industry employ a simple test – reviewing the Mannose value – to determine if the processor added foreign sugars or subjected the honey to industrial processing that is not suitable for honey to be labeled as 'Raw.'" [*Id.* ¶ 37.] Mannose is "not found in honey with a pH value lower than 5, but is regularly found in industrial sugars." [*Id.* ¶ 38.] "Under the Codex a concentration of mannose exceeding 0.02 g/100g in honey indicates the presence of foreign sugars or industrial processing." [*Id.* ¶ 39.]

Wertymer bought Raw Honey and Organic Raw Honey from Walmart. [*Id.* ¶¶ 48–49.] He had lab testing performed on these products, and based on the results, he alleges that both types of honey are improperly labeled "raw." [*Id.* ¶¶ 34, 40, 50–51.] Specifically, the Raw Honey had an HMF value of 22 mg/kg, above the 10 mg/kg expectation for raw honey, and allegedly indicative of heating. [*Id.* ¶¶ 34–36; *see id.* ¶ 33 (explaining that a bottle of Walmart's filtered honey, which is heated, had an HMF value of 39 mg/kg).] The Organic Raw Honey had a mannose value of 0.06

---

[1] Wertymer's initial Complaint alleged that Organic Raw Honey was not organic [*see* Dkt. 25 at 1], but he no longer pursues this theory of misrepresentation. [*See* Dkt. 26.]

g/100g, "3 times higher than the limit set by the Codex," which Wertymer alleges indicates that Walmart subjected this honey to industrial processing. [*Id.* ¶¶ 40–41.] Wertymer alleges that Walmart knew or should have known that it was improper to label its honey products "raw." [*Id.* ¶¶ 42–46.] Because of that mislabeling, Walmart allegedly charged higher prices for Raw Honey and Organic Raw Honey than filtered honey, and consumers paid those prices under the belief that the products labeled "raw" would contain the properties they expected. [*Id.* ¶¶ 47, 52–56.]

Wertymer brought this putative class action, and the Court granted Walmart's first motion to dismiss. [Dkt. 25.] Wertymer then filed a First Amended Complaint, which asserts: (1) that Walmart's labeling of Organic Raw Honey and Raw Honey violates the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1 *et seq.*; (2) that Walmart's labeling constitutes fraudulent misrepresentation; and (3) that the Court should declare that Walmart's Organic Raw Honey and Raw Honey are mislabeled. [Dkt. 26 ¶¶ 69–103.] Wertymer seeks to represent classes under Federal Rule of Civil Procedure 23 seeking monetary, declaratory, and injunctive relief. [*Id.* ¶¶ 104–05.] Walmart again moves to dismiss pursuant to Rule 12(b)(1) and (6). [Dkt. 30.]

## II.  Legal Standard

A motion to dismiss pursuant to Rule 12(b)(1) challenges the Court's subject-matter jurisdiction, while a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. In both cases, the Court takes well-pleaded factual allegations as true and draws reasonable inferences in favor of the plaintiff, *Choice v. Kohn L. Firm, S.C.*, 77 F.4th 636, 638 (7th Cir. 2023); *Reardon v. Danley*, 74 F.4th 825, 826–27 (7th Cir. 2023), but it need not accept statements of law or conclusory factual allegations as true, *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021). To survive dismissal, "a complaint must state a claim to relief that is plausible on its face." *Page v. Alliant Credit Union*, 52 F.4th 340, 346 (7th Cir. 2022) (cleaned up). This standard requires plaintiffs to provide "just enough details about the subject matter of the case to present a story that holds together," or "to nudge their claims across the line from conceivable to plausible." *Russell v. Zimmer, Inc.*, 82 F.4th 564, 570–71 (7th Cir. 2023) (cleaned up). Claims sounding in fraud, however, must be pleaded with particularity under Rule 9(b), which requires alleging "the first paragraph of any newspaper story, i.e., the who, what, when, where, and how of the fraud." *Lanahan v. County of Cook*, 41 F.4th 854, 862 (7th Cir. 2022) (cleaned up).

## III.  Analysis

### A.  Standing

The Court begins, as it must, with Walmart's jurisdictional challenge. *See, e.g.*, *Sherwood v. Marchiori*, 76 F.4th 688, 693 (7th Cir. 2023). Walmart moves to dismiss Wertymer's declaratory judgment claim under Rule 12(b)(1) for lack of subject-matter

3

jurisdiction. [Dkt. 31 at 14–15.] Walmart argues that because Wertymer knew about Walmart's allegedly deceptive labeling practices at the time he filed this lawsuit, he lacks standing to seek declaratory relief. [*Id.*] *See TransUnion, LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." (citations omitted)).

Declaratory judgments are a form of prospective relief. *See Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521 (7th Cir. 2021) ("Declaratory and injunctive relief are paradigmatic examples of prospective relief." (citation omitted)). "To have standing for prospective injunctive relief, a plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *accord Robinson v. City of Chicago*, 868 F.2d 959, 965–66 (7th Cir. 1989) (applying the same standing analysis to a claim for declaratory relief). Often, plaintiffs in consumer fraud cases lack standing to seek prospective relief because when they file their lawsuits, they know about the alleged deception, making it speculative that they will be injured by that deceptive marketing in the future. *See, e.g.*, *Camasta v. Jos. A. Bank Clothiers*, 761 F.3d 732, 740–41 (7th Cir. 2014). Such is the case here: Wertymer had his honey tested, so the prospect of him falling victim to Walmart's alleged mislabeling in the future is merely conjectural. That means he lacks standing to seek declaratory relief.

In its previous order, the Court flagged the possibility that the "capable of repetition, yet evading review" mootness doctrine might save Wertymer's claim for declaratory judgment from dismissal on jurisdictional grounds, but the Court took no firm position on the issue. [Dkt. 25 at 6–7.] Wertymer argues that this doctrine means that he has standing. He notes that "when [a] plaintiff represents class members who may later discover the defendants' fraud, her claim is capable of repetition, and she may pursue her claim for injunctive relief despite loss of her personal stake." *Mullen v. GLV, Inc.*, 488 F. Supp. 3d 695, 706 (N.D. Ill. 2020) (citing *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622, 625 (7th Cir. 2017)). This is true even before a class is certified. *See Laurens*, 868 F.3d at 623. But a case becoming moot implies that there was a live controversy at the outset. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) ("We have repeatedly held that an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation. A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (cleaned up)). A plaintiff cannot make use of a mootness exception if he lacked standing in the first place. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000) ("[I]f a plaintiff lacks standing at the time the action commences, the fact that the dispute is capable of repetition yet evading review will not entitle the complainant to a federal judicial forum." (citation omitted)). Wertymer had his honey tested before he filed suit, so he

4

knew about Walmart's alleged deception. He therefore lacked standing to seek a declaratory judgment at the outset, so a mootness exception cannot help him.

Wertymer argues that to prevail on the claims he brings, "every class member would need to submit honey they purchased for testing to determine whether the label is accurate, just like Plaintiff, and every class member would no longer be likely to be deceived upon receiving the test results that confirm the honey is not raw." [Dkt. 33 at 10.] Therefore, no consumer would ever have standing to seek declaratory relief based on Walmart's alleged deception. [*See id.*] Wertymer's point is, in effect, that he must have standing because otherwise no one would. This argument fails. There is no rule that someone must be able to seek prospective relief for every claimed injury, whether that injury is based on the mislabeling of honey or unconstitutional chokeholds. *See Lyons*, 461 U.S. at 105. Like the plaintiff in *Lyons*, John Wertymer's remedy if he has been injured is to seek damages, not a declaratory judgment. *See id.* at 111.[2] Walmart's motion to dismiss Wertymer's declaratory judgment claim for lack of subject-matter jurisdiction is granted.

B.     **The Merits**

Turning to the merits, Wertymer's theory of the case is that scientific testing reveals that Walmart's honey products are mislabeled as "raw." [*See* Dkt. 33 at 1 ("[Walmart's] representations are false and misleading to consumers because in reality, Walmart's honey is not raw since [Walmart] subjects it to industrial processing and excessively heats it during processing." (cleaned up)).] Wertymer's ICFA and fraudulent misrepresentation claims turn on whether the honey is properly labeled "raw." [*See* Dkt. 26 ¶¶ 78–82 (ICFA deception), 86–89 (ICFA unfairness), 92–93 (fraudulent representation).] The Court therefore considers these claims together, applying Rule 8's plausibility pleading standard, even though Rule 9(b)'s heightened pleading standard applies to the ICFA deception and fraudulent misrepresentation claims. *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019); *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). The First Amended Complaint fails to allege facts that make it plausible that Walmart mislabeled its Raw Honey or Organic Raw Honey.

Starting with Raw Honey, Wertymer alleges that consumers expect raw honey not to be excessively heated, and Raw Honey's HMF value of 22 mg/kg indicates that it was overheated because raw honey typically has HMF concentrations of no more than 10 mg/kg. [Dkt. 33 at 3–6.] Walmart argues that the factual allegations in the First Amended Complaint do not support a reasonable inference that consumers expect raw honey to have HMF values of no more than 10 mg/kg or that higher HMF values indicate excessive heating. [Dkt. 31 at 6–10.] The Court agrees with Walmart. As Wertymer alleges, consumers in the United States expect that honey conforms

---

[2]     Further, it may be possible for Wertymer or another consumer to seek declaratory relief in a state court, which need not follow federal standing requirements.

with USDA standards. [Dkt. 26 ¶ 13.] But the National Honey Board states that there is no definition of "raw honey"; instead, "raw honey generally means generally means honey that has not been heated or filtered." *Frequently Asked Questions*, *supra*. Absent from this general definition of raw honey is any reference to HMF values or the presence of compounds that Wertymer alleges are destroyed by excessive heating. [*See* Dkt. 26 ¶¶ 7–9.] Although Wertymer cites several sources to support his position that raw honey has certain HMF values or contains chemical compounds [*id.* ¶¶ 10–12, 15–18], he alleges no facts that make it plausible that consumers expect "raw" honey to conform to these standards when the National Honey Board states explicitly that there is no specific definition of "raw" honey. As Walmart points out, the source Wertymer relies on for the proposition that raw honey typically has an HMF level of no more than 10 mg/kg is from New Zealand. [Dkt. 31 at 9.] It is implausible to believe that an American consumer expects Walmart to conform to standards set out on a New Zealand website, and Wertymer makes no counterargument. [*See* Dkt. 33 at 6 (reiterating the allegation that at 22 mg/kg, Raw Honey's HMF content "is at least 2.4 times higher than the highest HMF values typical of raw honey").]

Even if a reasonable consumer would expect raw honey to have properties that could be measured by HMF content, the First Amended Complaint lacks allegations that make it plausible that it is misleading to label honey as "raw" if it has an HMF concentration of 22 mg/kg. The Court has explained that it is implausible that U.S. consumers would expect honey to conform with standards in a New Zealand source when American regulatory bodies do not set a specific standard, so the fact that Raw Honey's HMF concentration is well over 10 mg/kg does not support an inference that it is not "raw" within the reasonable expectations of an American consumer. Indeed, Raw Honey has a much lower HMF value than Walmart's filtered honey, 39 mg/kg [*see* Dkt. 26 ¶¶ 33–34], and as Walmart notes, the products look noticeably different. [*See* Dkt. 31 at 9 (citing Dkt. 26 ¶¶ 10, 13 & exh. 3, 5).] Even construing Wertymer's allegations in his favor, *see Reardon*, 74 F.4th at 827, a reasonable factfinder could not avoid the conclusion that Walmart's Raw Honey and filtered honey are chemically distinct products. USDA does not set a specific standard for raw honey, and the facts Wertymer alleges do not support an inference that a reasonable American consumer would expect a particular standard to apply to honey labeled "raw." Therefore, the Court holds that "Raw Honey" is not mislabeled as a matter of law.

Wertymer's allegations about Organic Raw Honey suffer similar deficiencies. The First Amended Complaint does not plead facts that make it plausible that a reasonable consumer would expect raw honey to have a mannose level below a specific level. [*See* Dkt. 26 ¶¶ 12, 37–39 (alleging only that consumers expect raw honey not to be subject to industrial processing and that certain mannose levels can indicate such processing).] Further, Wertymer alleges that mannose levels of over 0.02 g/100 g "*indicates* the presence of foreign sugars or industrial processing." [Dkt. 26 ¶ 39 (emphasis added).] In fact, the lab report Wertymer attaches to the First Amended Complaint states, "A concentration of mannose exceeding 0.02 g/100g in honey with a pH < 5 *could indicate* the presence of foreign sugars or industrial processing

6

practices which are not suitable for honey." [*Id.* at 64 (emphasis added).] As the Court previously explained, "alleging that honey 'could' contain contents … is not the same as alleging that it actually contains those contents, and … the report itself states that 'there are no indications for the presence of foreign sugars.'" [Dkt. 25 at 5 (cleaned up).] *Cf. Centers v. Centennial Mortg., Inc.*, 398 F.3d 930, 933 (7th Cir. 2005) ("[T]o the extent that the terms of an attached contract conflict with the allegations of the complaint, the contract controls." (citation omitted)). Even under the assumption that an ordinary consumer would not expect "raw" honey to contain foreign sugars, the First Amended Complaint does not support an inference that Organic Raw Honey had such foreign sugars. [*Contra* Dkt. 33 at 6–7.] Therefore, Walmart's "Organic Raw Honey" is not mislabeled as a matter of law.

Wertymer's ICFA and fraudulent misrepresentation claims depend on it being false or misleading for Walmart to label Raw Honey and Organic Raw Honey "raw." The facts alleged in the First Amended Complaint fail to support such an inference. Therefore, the Court grants Walmart's motion to dismiss for failure to state a claim without reaching the parties' additional arguments.[3]

## IV. Conclusion

For the foregoing reasons, Walmart's motion to dismiss [Dkt. 30] is granted. Wertymer has had one opportunity to amend his complaint, so he will not be given leave to amend again. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Wertymer's claim for declaratory judgment is dismissed without prejudice for lack of subject-matter jurisdiction, and his ICFA and fraudulent misrepresentation claims are dismissed with prejudice. Judgment shall enter in favor of Walmart and against Wertymer. Civil case terminated.

Enter: 23-cv-14700
Date: May 9, 2024

Lindsay C. Jenkins
United States District Judge

---

[3] The Court distinguished *Wingate v. Barkman Honey, LLC*, 2020 WL 362647 (D. Kan. Jan. 22, 2020), in its earlier order. [Dkt. 25 at 4.] *Wingate* remains distinguishable because Wertymer's allegations fail to support an inference that Walmart's honey would not meet a reasonable customer's expectations of "raw" honey. [*Contra* Dkt. 33 at 5.]